TINTIC-DELAWARE MINING CO. v. SALT LAKE, F. & K. R. CO. et al.

No. 3640. Decided December 14, 1921. Rehearing Denied February 3, 1921. (203 Pac. 871.)

CORPORATIONS—OFFICERS HELD NOT LIABLE TO A CREDITOR FOR USE OF MONEY ADVANCED TO IT CONTRARY TO CONTRACT WITH LATTER. Where a corporation used money contrary to the provisions of a contract with a creditor advancing it, officers not parties to, or having knowledge of the contract or the ex-

penditure of the funds for another purpose than that provided for, are not individually liable to such creditor.

Appeal from District Court, Fourth District, Utah County; *A. B. Morgan,* Judge.

Action by the Tintic-Delaware Mining Company against the Salt Lake, Fillmore & Kanosh Railroad Company and others. From that part of a judgment for plaintiff dismissing the action as to A. V. Robison and others, individual defendants, plaintiff appeals.

AFFIRMED.

*A. C. Hatch, of Heber,* and *Walton & Walton,* of Salt Lake City, for appellant.

*Baker & Baker,* of Provo, and *H. R. Waldo* and *W. D. Riter,* both of Salt Lake City, for respondent.

GIDEON, J.

The complaint filed in this case, after stating the corporate existence of plaintiff mining company and defendant railroad company, alleges that the individual defendants named were the organizers of the defendant company and subscribers to its capital stock; that George W. Craig was made president, and that the other individual defendants held other offices in the corporation mentioned in the complaint; also that said individual defendants solicited subscriptions for the construction of a railroad in the southern part of this state. It is then set out in the complaint that the defendants made statements to the plaintiff as to the building of the railroad whereby said plaintiff was induced to enter into a written agreement. The agreement is set out in full as a part of the complaint, and will be referred to later in this opinion.

It is alleged that pursuant to the agreement plaintiff, on or about July 6, 1918, deposited the money mentioned in

the contract to the credit of the defendant corporation; that it was induced to make such deposit by the false and fraudulent statements of defendants to the effect that the said railroad had been fully financed, and, that surveys, grading, and building would be commenced immediately and the road would be completed and in operation by November 15, 1918. It is then alleged that said project had never been financed; that, in violation of the terms of the agreement, the individual defendants caused the moneys deposited by the plaintiff to be expended in ways not mentioned in, but contrary to, the terms of the written agreement. It is further alleged that by reason of the false and fraudulent statements, and by reason of the violation of the terms of the written agreement, the plaintiff had been damaged in the sum of $5,000, the amount deposited.

During the trial plaintiff was permitted to file what is designated an "amendment to and supplemental complaint." In this supplemental complaint it is alleged that in the month of December, 1917, and prior to the incorporation of the defendant company, the individual defendants, as joint venturers, formed themselves into a syndicate of incorporation of the defendant company, and that on or about February 28th following became the organizers and subscribers of the capital stock of the defendant corporation, and ever since the former date were engaged as such syndicate in the promotion of such railroad and railroad project both as such syndicate and through the means and instrumentality of the defendant corporation. It is then alleged that the syndicate constituted the defendant George W. Craig as its general manager in said joint venture and in the affairs of said railroad project, and that the defendant corporation, from its organization, had, at all times, intrusted its affairs in connection with such project to the general management and control of said Craig. It is further alleged that the corporation, since its incorporation and organization, and the syndicate and association, since its organization, had, at all times, intrusted their funds and the funds of said association to the custody and actual control of the defendant Nelson

as treasurer of both said syndicate and association and said defendant corporation. In this supplemental complaint it is further alleged that on or about July 5, 1918, in furtherance of said joint venture, a written agreement, being the same as set out in the original complaint, was executed by the plaintiff and signed by the defendant Craig and immediately delivered; that it was signed on behalf of all of the defendants; that at the time of signing said agreement plaintiff offered to deposit the $5,000 mentioned in the agreement on the terms recited, upon condition that the defendant corporation would execute said agreement.

Plaintiff had judgment against the defendant corporation and the individual defendants George W. Craig and Alva Nelson, respectively president and treasurer of the defendant company. Plaintiff voluntarily dismissed its action against W. S. McCormick and F. D. Kimball. The action as against the individual defendants A. V. Robison, D. J. Carpenter, George E. Robison, and W. L. Biersach was dismissed by the court. From that part of the judgment dismissing the action as to the individual defendants last named, respondents here, plaintiff below, appellant here, appeals.

The defendant corporation, George W. Craig, and Alva Nelson have not appealed from the judgment against them, and they are therefore not before this court for any purpose.

The contract set out in appellant's complaint is dated July 6, 1918, and was executed on the part of appellant by its president and on the part of the railroad company by its president, the defendant Craig. The articles of incorporation of the railroad company were executed by the incorporators on or about February 7, 1918, and were filed with the Secretary of State on or about February 28, 1918. The agreement to enter into' articles of incorporation was had some time in January, 1918. Prior to January, 1918, and during the month of December, 1917, the defendant Craig had a meeting with the respondents, or, at least, with some of them, and others, at which he outlined the project upon which he had been working to construct a railroad to the southern part of the state. At that time the respondents

and others contributed small amounts to a fund for making some additional and further preliminary investigations respecting the construction of the road contemplated. That money was, by common consent, paid to the defendant Nelson as treasurer, Nelson being at the time cashier of a local bank. The money was expended under the general direction and supervision of the defendant Craig, and that was done with the consent of the respondents. In the contract found in the complaint among other things, is this provision:

"If for any reason whatsoever the said railroad company shall fail to construct said railroad or shall in any way fail to carry out the provisions of this contract, then and in that event the railroad right of way, as set forth in a survey made by said railroad company, shall pass to and shall be assigned by said railroad company to the said mining company and others as their interest may appear, it being particularly understood and agreed by and between the parties hereto that the said sum of $5,000 and such other sums deposited either by the said mining company or others is to be used expressly for the purpose of surveying the right of way of said railroad and for the construction of the first mile of said railroad.

"The payment of the consideration recited, to wit, $5,000, is a lien on the property of said railroad company for the completion of a survey and the construction of said railroad to the points heretofore designated."

Admittedly, the money so paid or deposited by the appellant company to the credit of the railroad company was not used for the purpose stated or stipulated in the contract. The amount so deposited was applied in part payment of the fees due a financial agency in an eastern city that had been employed to finance the road or sell its bonds and procure the necessary money for the construction of the road. The money was so applied with the consent and active participation of the defendants Craig and Nelson. It is not contended that any of the respondents knew anything about the execution of the agreement or that the money was being used contrary to the terms of the agreement. It should also be stated that the president of the appellant company was fully advised as to what use was to be made of the money, and was present when it was withdrawn from the bank by the treasurer and the railroad company and applied as it was. It

should be stated also that the district court, in its oral decision, expressly exonerated even the officials Craig and Nelson from any intentional or moral wrong in any regard. The money was applied to what all considered to be necessary expenditures in the construction of the projected railroad.

The case was tried to the court without a jury. Findings of fact were made in which the contract set out in the complaint was found to have been executed by the defendant company; that upon the strength of that contract the appellant deposited the money in a bank in Provo to the credit of the defendant company; that the defendant corporation used the money contrary to the stipulations and provisions contained in the contract; that the defendants Craig and Nelson were responsible for and participated, in the use of the money contrary to the provisions of the contract; that the remaining defendants were not parties to nor had they any knowledge of the execution of the agreement or the application or use of the funds for other purposes than as provided or stipulated in said agreement.

After a careful examination of the testimony and consideration of the facts leading up to the making of the contract found in plaintiff's complaint, we are of the opinion, and so hold, that the record supports the court's findings of fact. The findings of fact support the judgment. The consideration upon which this conclusion is founded depends upon an analysis of the evidence detailing the history of the negotiations between and the relationship of the respondents to the defendant company. A statement of the reasons which support the conclusions reached would and could amount only to a summary of the testimony taken in the case. No rule of law is involved or would be elucidated or announced in such summary. We therefore think it unnecessary to make such statement.

In *Bluefields S. S. Co.* v. *Lala Ferreras Cangelosi S. S. Co.*, 133 La. 424, 63 South. 96, the court, in discussing and determining a question similar to the one here involved said:

"But plaintiff has failed to prove that the other named defendants had any knowledge of, or connection with, any of these

transactions, except Mr. Frey, vice president, who was at one or two conferences, after the bananas had been sold.

"Plaintiff argues that defendants should be held for the knowledge which they should have had concerning the acts of the corporation of which they were directors, and which they could have learned had they examined the books and papers of the company. But the original contract was not entered upon the minutes of the board, and it was not authorized or ratified by the board; and the discount or sale of the drafts was not shown to have been communicated to the other defendants by Lala, or in any other way. Under these circumstances, we are of the opinion that the members of the board of directors, other than the president, cannot be held responsible for the diversion of the funds referred to."

See, also, the following authorities: *Sweet* v. *Montpelier, etc.,* 69 Kan. 641, 77 Pac. 538, same case on second appeal, 73 Kan. 47, 84 Pac. 542; *Cone* v. *United Fruit Growers Ass'n,* 171 N. C. 530, 88 S. E. 860; *Virginia-Carolina Chem. Co.* v. *Ehrich et al.* (D. C.) 230 Fed. 1005.

We find no error in the record. Judgment is affirmed, with costs.

WEBER, THURMAN, and FRICK, JJ., concur.

CORFMAN, C. J., being disqualified, did not participate. Cause was submitted to four justices.

On Petition for Rehearing.

GIDEON, J. Appellant, in a petition for rehearing insists that certain statements of fact made in the opinion are contrary to the undisputed evidence. The statement especially challenged is:

"The amount so specified was applied in part payment of the fees due a financial agency in an eastern city that had been employed to finance the road or sell its bonds and procure the necessary money for the construction of the road."

The claim or argument is based upon the theory, advocated by appellant, that the money paid to the railroad company constituted a trust fund to be exclusively used for a specific purpose mentioned in the contract.

It is no concern here what the relationship of the defendant railroad to this fund may have been by reason of the terms of the contract. The fund, if it ever became a trust so far as the respondents are concerned, must have been a trust ex maleficio. Knowledge on the part of respondents of the terms of the contract and consent on their part to the use of the funds contrary to the known terms of the contract are necessary to charge them as such trustees. The findings of the district court negative the contention that the respondents had any such knowledge. Basing the argument upon the trust theory, it is the further contention of the appellant that all amounts paid to the financial agency and for other purposes must be considered as taken from money otherwise in the treasury of the railroad company before applying any of the $5,000 paid by appellant. If appellant's theory is correct, that the money became a trust fund in the hands of the railroad company, that claim or contention might be effective against the railroad company, but it could not establish liability on the part of the respondents without their knowledge or consent.

It is, however, strenuously insisted that the respondent Biersach, at the time he consented to the payment of $200 for counsel to defend the railroad company in this action, was cognizant of the terms of the contract. The testimony is clear that this respondent consented to the payment of this amount from the treasury of the railroad company subsequent to the date when he knew the terms of the contract, but it is not satisfactorily shown that the funds so paid were part of the funds deposited or paid in by the appellant. There had been other moneys paid into the treasury between the date of the payment by appellant and the date of payment of the $200 to counsel. As we view the facts disclosed by this record and the findings of the district court, it can in no way affect the result whether the amount paid by the mining company was applied in payment of the fees due the financial agency or whether they were applied in the payment of other expenses.

Rehearing is denied.

WEBER, THURMAN, and FRICK, JJ., concur.